IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SARAH J. GIBBY,       ) | |
|     Plaintiff,       ) | |
| ) | |
| v.       ) | CIVIL ACTION NO. 1:20-00059-N |
| ) | |
| ANDREW M. SAUL,       ) | |
| *Commissioner of Social Security*,       ) | |
|     Defendant.       ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sarah J. Gibby brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security terminating her entitlement to a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 13, 14) and those portions of the transcript of the administrative record (Doc. 11) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, order the entry of final judgment, and conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 16, 17).

## I. *Procedural Background*

On October 29, 2012, the Commissioner found Gibby disabled as of March 22, 2012, and therefore entitled to DIB. On July 18, 2016, it was determined that Gibby was no longer disabled as of July 1, 2016. After a State agency officer upheld this determination, Gibby requested a hearing before an Administrative Law Judge ("ALJ") with Office of Disability Adjudication and Review of the Social Security Administration ("SSA"). The first hearing with an ALJ was held in July 2017, but was postponed after brief testimony to permit Gibby time to secure representation. A second hearing was held before the same ALJ in January 2018, with a supplemental hearing set to allow Gibby more time to gather medical evidence. The supplemental hearing was held before a different ALJ on December 12, 2018, at which Gibby affirmed her desire to proceed without a representative. On December 27, 2018, the second ALJ issued an unfavorable decision upholding the termination of DIB, finding that Gibby's disability had ended on July 1, 2016, and that she had not become disabled again since then. (*See* Doc. 11, PageID.66-77).

The Commissioner's decision on the termination of Gibby's DIB became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the second ALJ's unfavorable decision on December 6, 2019. (*Id.*, PageID.44-49). Gibby subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy,

may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022,

1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061

(11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference

---

ALJ's credibility finding.").

and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

Eligibility for DIB requires a showing that the claimant is under a disability, 42 U.S.C. § 423(a)(1)(E), which means that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> Where, as here, a claimant has been previously deemed disabled, the question is whether he suffers from a continuing disability. The ALJ applies an eight-step analysis to determine continuing disability: (1) whether the claimant is engaging in substantial gainful activity; (2) if not gainfully employed, whether the claimant has an impairment or combination of impairments that meets or equals a listed condition; (3) if impairments do not meet a listing, whether there has been medical improvement; (4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work; (5) if there is improvement not related to the claimant's ability to do work, whether an exception to medical improvement applies, *see* 20 C.F.R. § 404.1594(d), (e); (6) if medical improvement is related to the claimant's ability to do work or if an exception applies, whether the complainant has a "severe impairment," *see id.* § 404.1521; (7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and (8) if the claimant cannot perform past relevant work, whether the claimant can perform other work. *Id.* § 404.1594(f)(1)-(8).

*Klaes v. Comm'r of Soc. Sec.*, 719 F. App'x 893, 895 (11th Cir. 2017) (per curiam) (unpublished).[6]

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this eight-step sequential evaluation.

(per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the Appeals Council denies review of an ALJ's unfavorable decision, the Court "review[s] the ALJ's decision as the Commissioner's final

decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Analysis*

#### a.   **Medical Improvement**

After determining at Step One that Gibby had not engaged in substantial gainful activity through the date of his decision, the second ALJ determined that Gibby continued to have the same medically determinable impairments she had at the time of the October 29, 2012 disability determination, the most recent final decision holding that she was disabled (referred to as the "comparison point decision," or "CPD"), which were: degenerative disc disease, osteoarthritis of the left knee, and obesity. (Doc. 11, PageID.68). At Step Two, the second ALJ found that, since her disability cessation date of July 1, 2016, Gibby did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (*Id.*, PageID.68-69). At Steps Three and Four, the ALJ found, respectively, that medical improvement had occurred on July 1, 2016, and that the improvement was related to Gibby's ability to work since it resulted in a less

restrictive residual functional capacity than the one found in the CPD.[7] (Doc. 11, PageID.69-74).[8]

Gibby's first claim of reversible error is that the ALJ's finding of medical improvement is not supported by substantial evidence, "given her ongoing symptomology and MRI evidence showing that her lumbar back condition has worsened since" the CPD. (Doc. 13, PageID.798, 803). Gibby claims that the ALJ "cherry picked" evidence by "focus[ing] heavily on [Gibby]'s temporary improvement immediately following her lumbar surgery." (*Id.*, PageID.802). The undersigned disagrees.

As discussed in the second ALJ's decision, at the time of the 2012 CPD, imaging showed continuing degeneration related to Gibby's lower back and leg pain, and there was significant neural foraminal stenosis and severe functional limitation, with historical treatment including steroid injections, daily medication, and physical therapy. While reporting some lower back pain in 2015, she denied

---

[7]
> [T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a) … [T]he ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e) … [T]he RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work … ; and (2) can adjust to other work…

*Phillips*, 357 F.3d at 1238.

[8] The CPD's RFC limited Gibby to sedentary work, while the RFC by the second ALJ in the continuing disability proceedings limited Gibby to a reduced range of light work. *See* (Doc. 11, PageID.70, 74, 144-147); 20 C.F.R. § 404.1567(a)-(b).

other symptoms of pain. She continued physical therapy in November 2015; by January 2016, notes indicated Gibby was doing "really well," with diminished pain and improved active range of motion, and she was discharged. At this time, the ALJ noted that there was some medial compartment narrowing in the knee, but that cartilage was preserved, and Gibby reported preparing to return to light work. (Doc. 11, PageID.71).

Gibby did begin receiving specialist treatment for leg pain in December 2016, sourced to L4-L5 degeneration. After a steroid epidural and transforaminal injection provided only temporary relief, Gibby underwent lumbar surgery on February 17, 2017, with recovery notes documenting "slow but steady" improvement. (*Id.*, PageID.72). On March 7, 2017, for example, she was noted to be "progressing beautifully." (*Id.*, PageID.72, 690).

In mid-May 2017, Gibby reported bursitis of the hip and was treated with injection. Gibby also reported a fall in June 2017, but at the time presented "negative straight leg raise testing, full strength, fluid gait, and favorable x-ray imaging of her surgical hardware…" By late July 2017, Gibby's orthopedist, Dr. Petersen, again noted benign findings and favorable progress, and allowed her to lift up to 20 pounds consistent with light work (an opinion which the ALJ gave "great weight"). By the fall of 2017, Gibby was not reporting any significant pain or discomfort, and even performed part-time work. (*Id.*, PageID.72-73). From December 2017 through July 2018, Gibby experienced some pain symptoms, but those were generally controlled with conservative treatment. (*Id.*, PageID.73).

In support of her first claim of error, Gibby largely cites the same evidence the second ALJ discussed in his decision, though she asserts the ALJ should have given more weight to her periods of increased pain and to new diagnoses of spinal abnormalities. However, this Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the ALJ's, *Winschel*, 631 F.3d at 1178, and the ALJ's findings, if supported by substantial evidence, must be upheld even if the evidence preponderates against them. *Ingram*, 496 F.3d at 1260. Moreover, a finding of medical improvement related to the ability to work does not require that a claimant be completely cured of all maladies and free of any work restrictions. Rather, it simply requires that the claimant be able to do more than she could since last being found disabled. Here, substantial evidence reasonably supports the ALJ's finding that Gibby had medically improved since the cessation date to the point that she could perform a range of light work, instead of merely sedentary work to which the CPD limited her. Accordingly, Gibby's first claim of error is without merit.

### b. Vocational Expert Hypothetical

The second ALJ proceeded through the remaining steps of the sequential evaluation, eventually reaching Step Eight. (*See* Doc. 11, PageID.74-75). There, after considering testimony from a vocational expert,[9] the ALJ found that there

---

[9] "[T]he ALJ may determine whether the claimant has the ability to adjust to other work in the national economy … by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at

existed a significant number of jobs in the national economy that Gibby could perform given her RFC, age, education, and work experience, and therefore that she was not under a disability as of the cessation date of July 1, 2016. (Doc. 11, PageID.76-77). However, the second ALJ did not himself ask hypotheticals to a vocational expert at the hearing he held, but instead relied on the vocational expert testimony given at the January 2018 hearing in response to the first ALJ's hypothetical questions. In her second, and final, claim of reversible error, Gibby argues that the second ALJ could not have relied on the first ALJ's hypothetical because the second ALJ determined a different RFC for Gibby than the limitations the first ALJ posed in her hypothetical, relying on the established principle that in "order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quotation omitted). In response, the Commissioner argues that any error in this regard was harmless because the first ALJ's hypothetical was more restrictive than the RFC assessed by the second ALJ's. The undersigned agrees with the Commissioner.

"[E]ven if an ALJ commits an error, the error is harmless if it did not affect his ultimate determination…" *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 872 (11th Cir. 2020) (per curiam) (unpublished) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). While both the first ALJ's hypothetical and the second ALJ's RFC limited Gibby to a reduced range of light work, the additional limitations

---

1240.

imposed by the first ALJ either matched those imposed by the second ALJ, or were more limiting. The first ALJ found that Gibby could never climb ladders, ropes, or scaffolds, and only occasionally climb ramps or stairs; the second ALJ found that Gibby could occasionally climb ladders, ropes, or scaffolds, and could frequently climb ramps or stairs. *Compare* (Doc. 11, PageID.70) *with* (*id.*, PageID.120). The first ALJ found that Gibby could occasionally balance, stoop, kneel, crouch, and crawl; the second ALJ found those same limitations, except that Gibby could frequently balance. *Compare* (Doc. 11, PageID.70) *with* (*id.*, PageID.120). The first ALJ found that Gibby could handle occasional exposure to extreme cold and vibration, and no exposure to unprotected heights; the second ALJ found that Gibby must avoid concentrated exposure to extreme cold, vibration, and workplace hazards. *Compare* (Doc. 11, PageID.70) *with* (*id.*, PageID.120). Therefore, it stands to reason that, if the vocational expert identified sufficient other jobs Gibby could perform in response to the first ALJ's more restrictive hypothetical, the vocational expert could have done the same in response to a hypothetical based on the second ALJ's less limited hypothetical. Accordingly, any error in the second ALJ's reliance on the hypothetical posed by the first ALJ is harmless.

No reversible error having been shown, the Court finds that the Commissioner's final decision terminating Gibby's entitlement to DIB is therefore due to be **AFFIRMED**.

### IV.  *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the

Commissioner's final decision terminating Gibby's DIB as of July 1, 2016, is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2021.

>  */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**